IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JUANITA WALKER, | ) | |
| | ) | 4:10CV00048 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SERVICE CORPORATION | ) | |
| INTERNATIONAL, ET AL., | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Before me is a Motion to Dismiss by all named Defendants. Mot. to Dismiss, Dec. 10, 2010, ECF No. 27. The parties have thoroughly briefed this matter. Br. in Supp. of Mot. to Dismiss, Dec. 10, 2010, ECF No. 28; Pl.'s Br. in Opp'n, Jan. 14, 2011, ECF No. 37; Defs.' Reply, Jan. 24, 2011, ECF No. 39. On March 31st, 2011, the Court held a telephonic hearing on the Defendants' motion. For the reasons explained herein, the Defendants' Motion to Dismiss is **GRANTED** and the Plaintiff's request for leave to amend her Complaint is **DENIED**.

## FACTS

On October 5th, 2010, Plaintiff Juanita Walker filed what she styled as a "Class Action Complaint" against Defendants Service Corporation International, SCI Funeral and Cemetery Purchasing Cooperative, Inc., SCI Eastern Market Support Center, L.P., Jane Jones, Gwen Petteway, and Thomas Ryan. Compl., Oct. 5, 2010, ECF No. 1. Service Corporation International is a corporation both headquartered in and incorporated under the laws of the State of Texas. Id. at 16. SCI Funeral and Cemetery Purchasing Cooperative, Inc. and SCI Eastern Market Support Center, L.P. are entities owned by Service Corporation International. Id. at 5, 11. Jane Jones and Gwen Petteway have held high-level human resources positions at SCI since

2005.  Id. at 21, 24.  Thomas Ryan has been both President and Chief Executive Officer of SCI since 2003.  Id. at 28.  The Plaintiff, who hopes that this suit will eventually be certified as a class action, filed her claims "on behalf of herself and all other employees similarly situated." Id. at 1.  The Plaintiff has defined which current and former employees count as those similarly situated as those who were affected by any combination of four policies—the community work policy, the on call pay policy, the meal break policy, and the unrecorded work time policy.  Id. at 4-5.

Under the community work policy, the Defendants required or encouraged funeral directors, embalmers, and family service counselors to volunteer their time in community service organizations such as the Hospice, Rotary, or the Lions.  Id. at 32-33.  The Plaintiff avers that the goal of the community work policy was to generate business for the Defendants.  Id.  Prior to July 2007, the Defendants had no written policy instructing employees as to when to record such work.  Id.  After July 2007, the Defendants instituted a written policy whereby employees were not to report their time at non-company sponsored civic and charitable activities.  Id.

The Defendants' on call pay policy was a scheme whereby employees handled calls and other work issues after hours, but were not fully compensated.  Id. at 33.  Hourly employees would also perform removals after hours while they were on call, but those employees were not paid for the time in between taking the initial phone call and arriving at the funeral home to pick up the company car, which they would then drive to the removal site.  Id.

The Plaintiff also alleges that the Defendants maintained a policy under which employees would often work through or be interrupted during their scheduled meal breaks.  Id. at 33-34. Despite not taking their full meal break, employees were not paid for their missed or interrupted meal breaks "in accordance with the law."  Id. at 34.

The last matter of which the Plaintiff complains, the unrecorded work policy, is the broadest. Under the unrecorded work policy, the Plaintiff alleges that the Defendants willfully did not pay their employees the "regular or statutorily required rate of pay" for all hours worked. Id. The Defendants would encourage the employees to engage in work off the clock. Id. One of the ways in which the Defendants did this was to pay managers bonuses based on staying within the payroll operating budget. Id. In doing so, the Defendants pressured these lower and middle level managers to permit and even encourage off the clock work. Id.

Generally speaking, the Plaintiff avers that the four policies outlined above resulted in the Plaintiff not being paid her "regular or statutorily required rate of pay for work." Id. at 32. Specifically, the Plaintiff alleges that these four policies promulgated and enforced by the Defendants constituted a breach of contract, fraud, unjust enrichment, a breach of an implied covenant of good faith and fair dealing, conversion, and misrepresentation. Id. at 35-43. The Plaintiff has been careful to pepper her Complaint with assurances that:

> Class Members are not asserting claims under this cause of action for overtime wages recoverable under the [Fair Labor Standards Act]. However, Class Members nevertheless performed work pursuant to the policies and practices set forth [in the Complaint], for which they were not compensated, regardless of whether they worked over 40 hours per week also entitling them to additional compensation under the FLSA.

Id. at 35, 36, 38, 40, 41. The Complaint is rather elusive about the source of the Plaintiff's right to payment, which the law appears to limit to three sources—the FLSA, state law, or a contract.[1] The Complaint contains some references to unspecified statutes, a policy manual guaranteeing

---

[1] The lawsuit filed in the Western District of Virginia is the latest in a series of suits surrounding these underlying facts. The Defendants note that this litigation began in 2004 and since then the Plaintiff's counsel has maintained suits in the Western District of Pennsylvania, the Northern District of California, and the District of Arizona. Br. in Supp. of Mot. to Dismiss 1-4, Dec. 10, 2010, ECF No. 28; Compl. 2-3. By contrast to the Complaint filed in this district, the Complaint filed in Arizona in Stickle v. SCI Western Market Support Center, L.P. et al., No. 2:08-cv-83 (D. Ariz. filed Jan. 15, 2008), indicates that the Plaintiff was entitled to payment under the FLSA. Stickle Compl., Dec. 12, 2010, ECF No. 28-1.

payment for all hours worked, and an "unwritten contract for at-will employment between Class Members and defendants." Id. at 32 (referencing an unspecified "regular or statutorily required rate of pay for work"), 37 (policy manual and a vague reference to "the relevant law"), 40 (oral contract). Nowhere in the Complaint does the Plaintiff set out the wage that the she or any other employee was to be paid or whether some or all of the hours addressed in the Complaint are in fact overtime.[2]

On December 10th, 2010, the Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In their supporting brief, the Defendants argue that the Plaintiff's state law claims are preempted by the FLSA and are duplicative of a case Plaintiff's counsel filed in the District of Arizona, Stickle v. SCI Western Market Support, L.P. et al., No. 2:08-cv-83 (D. Ariz. filed Jan. 15, 2008). Br. in Supp. of Mot. to Dismiss 7-8. In addition, the Defendants assert that the breach of contract and implied covenant claims should be dismissed as mere "labels and conclusions" which fall short of the pleading standards set out in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Id. at 18. As to the Plaintiff's fraud and "misrepresentation" claims, the Defendants aver that these have not been plead with particularity as required by Fed. R. Civ. P. 9(b) and are merely attempts to recover both in contract and in tort when there is no common law duty to support liability in tort.[3] Id. at 19-21. The Defendants also assert that the Plaintiff's restitution claim cannot stand because equitable remedies are only available where remedies at law are inadequate, which they are not here. Id. at 22. Finally, the Defendants demand that the conversion claim be dismissed because

---

[2] The Plaintiff appears to try to deflect attention away from whether or not the hours at issue were overtime hours. See, e.g., Compl. at 34 ("The alleged policies were not limited to overtime hours worked. Instead, employees, regardless of the number of hours worked, whether overtime or not, were not paid for all hours worked.). As explained in this Memorandum Opinion, however, whether these hours were in fact overtime hours makes a great deal of difference in the available remedies.

[3] As explained below in this bench memo, Virginia probably does not recognize a claim for negligent misrepresentation. Instead, Virginia has a similar cause of action for constructive fraud.

conversion applies where there has been a taking of tangible property, which there has not been here. Id. at 23.

The Plaintiff filed a Brief in Opposition to the Defendants' Motion to Dismiss on January 14th, 2011. In that brief, the Plaintiff insists that she is not seeking "overtime wages recoverable under the FLSA," but is seeking "relief for defendants' failure to compensate plaintiffs for all hours worked regardless of whether plaintiffs were still paid the minimum wage and regardless of whether plaintiffs worked overtime." Id. at 3, 7. She further asserts that "[i]n any event, preemption does not apply legally because the FLSA is not the exclusive remedy for claims that it does cover." Id. at 5. The Plaintiff attempts to distinguish the case at bar from the case filed in the District of Arizona by pointing out that she hopes to have this case certified as an opt-out class action covering only SCI employees who worked in Virginia. Id. at 3. The Arizona case, by distinction, is a nationwide opt-in class action. Id. The Plaintiff further avers that she has sufficiently plead all claims. Id. at 15-22. On January 24th, 2011, the Defendants filed a Reply to the Plaintiff's Brief in Opposition in which they reassert their position and offer more support for it. On March 31st, 2011 the Court held a telephonic hearing on the Defendants' Motion to Dismiss.

## APPLICABLE LAW

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a claim. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). It is also the proper vehicle by which the Court considers a preemption claim. Anderson v. Sara Lee Corp., 508 F.3d 181, 195 (4th Cir. 2007). When considering a Rule 12(b)(6) motion, the Court must take all of the Plaintiff's assertions of fact as true, but need not give weight to the Plaintiff's conclusions of law. Francis, 588 F.3d at 192 (must accept Plaintiff's assertions of fact as true); Twombly, 550 U.S. at 555

(Court need not accept legal conclusions). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citing references and quotation marks omitted).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is limited to considering the Complaint itself, exhibits attached to the Complaint, documents that the Complaint incorporates by reference (as long as they are authentic and integral to the Complaint), and those matters of which the Court may take judicial notice. Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009). If the Court considers any evidence beyond the aforementioned materials, the motion must be converted to a motion for summary judgment. Pueschel v. U.S., 369 F.3d 345, 354 fn.3 (4th Cir. 2004). The rationale for this is simple—Complaints challenged under Fed. R. Civ. P. 12(b)(6) are not to be weighed by an evidentiary measure. Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009). Where the Court determines that further factual development is necessary in order to make an accurate determination of whether claims are to be dismissed, Rule 12 permits the Court to defer its ruling as to the claims' legal sufficiency "until the next dispositive stage." Flue-Cured Tobacco Co-op. Stabilization Corp. v. U.S. E.P.A., 857 F.Supp. 1137, 1145 (M.D.N.C. 1994); Evello Investments, N.V. v. Printed Media Services, Inc., 158 F.R.D. 172, 173 (D. Kan. 1994).[4]

---

[4] These two cases cite Fed. R. Civ. P. 12(d) in support of the proposition that the District Court may defer its ruling on a Rule 12(b)(6) motion. Although both of these cases were decided years before the 2007 Restyling of the Federal Rules of Civil Procedure, what was Rule 12(d) lives on in the post-Restyling Rules under the new heading of Rule 12(i). Since the changes made during the 2007 Restyling project were meant to be stylistic only, it does not

Fed. R. Civ. P. 9(b) further provides that allegations of fraud must be made with particularity. A plaintiff claiming fraud must "plead with particularity the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." In re Mutual Funds Investment Litigation, 566 F.3d 111, 120 (4th Cir. 2009) (internal citing references and quotation marks omitted). The amount of specificity required is context-specific and thus may vary from case to case. U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 188 (5th Cir. 2009). In no case does Rule 9(b)'s particularity requirement supplant the notice pleading system used in the federal courts. Id. at 186. The sufficiency of a fraud claim must still be examined through the pleading prism set out by the Supreme Court in Iqbal and Twombly. Id. The Supreme Court has also noted that, under Fed. R. Civ. P. 9(b), only fraud and mistake must be plead with particularity. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993). There can be no common law additions to Rule 9's list. Pratt v. Tarr, 464 F.3d 730, 731 (7th Cir. 2006).

## ANALYSIS

### I. The Plaintiff May Only Proceed on Her State Law Claims if Her Contract Is More Generous than the FLSA

The Defendants contend that the FLSA preempts the Plaintiff's state law claims. Br. in Supp. of Mot. to Dismiss 7-8. The Plaintiff counters that she is not seeking relief under the FLSA, but is demanding "relief for defendants' failure to compensate plaintiffs for all hours worked regardless of whether plaintiffs were still paid the minimum wage and regardless of whether plaintiffs worked overtime." Pl.'s Br. in Opp'n 7. The Plaintiff further avers that the

---

disturb the holding in the two cases cited above. See Bingue v. Prunchak, 512 F.3d 1169, 1172 fn.4 (9th Cir. 2008) (changes in the Rules were stylistic only); Trantham v. Henry County Sheriff's Office, et al., No. 4:10-cv-58, mem. op. at 14 (W.D.Va. Mar. 10, 2011) (applying pre-2007 case law because 2007 changes were stylistic only).

FLSA is not the exclusive remedy for the claims it covers.  Id. at 5.  The case law, however, is not on the Plaintiff's side.

In 2007 the Fourth Circuit held "that Congress prescribed exclusive remedies in the FLSA for violations of its mandates."  Anderson, 508 F.3d at 194.  The Court of Appeals further held that where the state law claims asserted essentially required the same proof as claims under the FLSA itself, those state law claims were preempted under the FLSA.  Id. at 193-94.  The First and Eleventh Circuits have reached conclusions consistent with the Fourth Circuit's holding in Anderson.  In Avery v. City of Talladega, the Eleventh Circuit held that the FLSA does not preempt state law contract claims that seek to recover wages for time compensable under the contract but not under the FLSA.  Avery v. City of Talladega, 24 F.3d 1337, 1347-48 (11th Cir. 1994).  The Eleventh Circuit reversed the District Court's granting of summary judgment to the defendant on the plaintiff's employment contract claim because it was unclear whether a FLSA violation had, in fact, occurred.  Id. at 1348.  The Avery Court did note, however, that the plaintiff in that case would not be entitled to a double recovery under two theories and that any contract claim could survive only as an alternative to the FLSA claim.  Id.  In the time between the Eleventh Circuit's 1994 decision in Avery and the Fourth Circuit's 2007 decision in Anderson, the First Circuit also held that the FLSA is the exclusive enforcement mechanism where its provisions are violated.  Roman v. Maietta Const., Inc., 147 F.3d 71, 76 (1st Cir. 1998).  The First Circuit commented that a "plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims."  Id.

The only federal appellate court to decide this issue differently has been the Ninth Circuit.  In Wang v. Chinese Daily News, Inc., the San Francisco-based Court held that the FLSA did not preempt a California unfair competition statute that borrowed its substantive

standard from the FLSA. Wang v. Chinese Daily News, Inc., 623 F.3d 743, 760 (9th Cir. 2010). The Ninth Circuit addressed the Fourth Circuit's decision in Anderson and found it unpersuasive because the Anderson Court rested its conclusion on a prior Fourth Circuit decision which the Ninth Circuit held to be irrelevant to a preemption analysis in a 2000 decision. Id. (citing Williamson v. General Dynamics Corp., 208 F.3d 1144, 1153 (9th Cir. 2000) and Kendall v. City of Chesapeake, 174 F.3d 437, 439-43 (4th Cir. 1999)). Citing its decision in Williamson, the Wang Court suggests that, in Anderson, the Fourth Circuit hastily conflated the case where the plaintiff asserts state law claims parallel to the FLSA and the case where the plaintiff seeks to use another federal statute to enforce rights falling under the FLSA's coverage.[5] Wang, 623 F.3d at 760 (citing Williamson, 208 F.3d at 1153).

Although the Ninth Circuit's decision in Wang is somewhat at odds with the Fourth Circuit's seemingly broad holding in Anderson, the Wang holding may be a fairly narrow one. The Wang Court focused only on one California unfair competition statute and even noted that outside the context of that one statute the trend among U.S. District Courts in the state was to hold state law claims duplicative of the FLSA to be preempted. Wang, 623 F.3d at 759-60. Interestingly, one of the cases the Wang Court cited was the case maintained by Plaintiff's counsel in the Northern District of California. Id. (citing Helm v. Alderwoods Group, Inc., 696 F.Supp.2d 1057 (N.D.Cal. 2009) (outside of the context of the statute at issue in Wang, holding that claims directly covered by the FLSA must be brought under that statute)). The holding of the U.S. District Court for the Northern District of California in Helm is consistent with the Fourth Circuit's decision in the Anderson case. Compare Anderson, 508 F.3d at 194 with Helm, 696 F.Supp.2d at 1075-76. In fact, the Helm Court went on to hold that the state law claims for

---

[5] The latter was the scenario before the Fourth Circuit in Kendall.

unpaid overtime brought by Plaintiff's counsel were directly covered by the FLSA and were therefore preempted. <u>Helm</u>, 696 F.Supp.2d at 1076.[6]

The Plaintiff also offers a number of District Court cases that take a different position than the <u>Anderson</u> Court. Those cases differ from the <u>Anderson</u> decision in one crucial regard— they are not binding upon this Court. Only one of the cases the Plaintiff offers comes from a District Court within this circuit, though not this judicial district, and that case was decided four years before <u>Anderson</u>. Pl.'s Br. in Opp'n 9 (citing <u>Paukstis v. Kenwood Golf & Country Club, Inc.</u>, 241 F.Supp.2d 551, 559-60 (D.Md 2003)).

In <u>Anderson</u>, the Fourth Circuit expanded upon the <u>Kendall</u> case. The Fourth Circuit noted in <u>Kendall</u> that "in the FLSA congress manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms." <u>Kendall</u>, 174 F.3d at 443. This was a broad statement, which the <u>Kendall</u> Court did not appear to limit to the context presented in that case—an action under 42 U.S.C. § 1983 to enforce FLSA rights. In <u>Anderson</u>, the Fourth Circuit began with <u>Kendall</u>'s wide premise and confirmed that the FLSA even provides the exclusive remedies for violating its terms where state law remedies would otherwise be available. <u>Anderson</u>, 508 F.3d at 194. Insofar as the Plaintiff is arguing that <u>Anderson</u> was improvidently decided, only the Fourth Circuit sitting en banc or the Supreme Court can do something about it. <u>Mentavlos v. Anderson</u>, 249 F.3d 301, 312 fn.4 (4th Cir. 2001); Pl.'s Br. in Opp'n 10 ("Defendants' reliance on <u>Anderson</u> is also misplaced because the <u>Anderson</u> court failed to explain how permitting plaintiffs' state law claims would have any effect on, or present any obstacle to, enforcement of the FLSA"). At the March 31st motion hearing, the Plaintiff also

---

[6] The <u>Helm</u> case is by no means the only District Court case that supports the Fourth Circuit's position. In one of the most recent, published cases in the country to consider the issue, the U.S. District Court for the Eastern District of New York held that "allowing additional remedies for duplicative claims would serve as an obstacle to the enforcement of the FLSA." <u>Sosnowy v. A. Perri Farms, Inc.</u>, ---F.Supp.2d---, 2011 WL 488692, at *9 (E.D.N.Y. 2011). <u>Accord</u> <u>Martinez-Hernandez v. Butterball, LLC</u>, 578 F.Supp.2d 816, 819 (E.D.N.C. 2008).

argued that Anderson is distinguishable from the case at bar because the state law claims at issue in Anderson were predicated on showing FLSA violations.  Anderson, 508 F.3d at 193 ("[c]rucially, though, the Class Members' state claims all depend on establishing that Sara Lee violated the FLSA").  In this case, by contrast, the Plaintiff pointed out that the Complaint specifically alleges that she is not seeking wages recoverable under the FLSA.  Compl. 35, 36, 38, 40, 41.  This, however, is a legal conclusion that the Court is under no obligation to accept. Twombly, 550 U.S. at 555.

To be clear, the FLSA does not preempt any and all state law wage claims.  The Plaintiff correctly points out that the FLSA contains a savings clause permitting states and localities to enact wage and hour laws that are more generous than the FLSA.  29 U.S.C. § 218(a).  See also Martinez-Hernandez v. Butterball, LLC, 578 F.Supp.2d 816, 819-20 (E.D.N.C. 2008).  That same savings clause also appears to allow employees to bring wage and hour-based contract claims against employers where the provisions of the contract are more munificent than the FLSA's provisions.  29 U.S.C. § 218(a) ("[n]o provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter").  See also Freeman v. City of Mobile, 146 F.3d 1292, 1298 (11th Cir. 1998).  Employees may not, however, bring state law wage claims where the state law or contract upon which they rely is merely as generous as the FLSA, as claims like these would be preempted as duplicative under Anderson.[7]  Anderson, 508 F.3d at 194.  It should be noted that not only is Virginia's minimum wage the same as the federal minimum wage, but the Virginia Minimum Wage Act specifically exempts from its

---

[7] Of course, in spite of the norm of freedom of contract, an employer and an employee may not agree to a contract that is less generous than the FLSA.  Sosnowy, ---F.Supp.2d---, 2011 WL 488692, at *10; Fuentes v. CAI Intern., Inc., 728 F.Supp.2d 1347, 1354 (S.D.Fla. 2010).

provisions anyone whose employment is covered by the FLSA. Va. Code Ann. § 40.1-28.10 (for

minimum wage provision); Va. Code Ann. § 40.1-28.9(12) (for FLSA coverage exemption).

Virginia does not have state overtime laws and therefore defers to the FLSA on overtime.[8]

Outside of the context of a contract more generous than the FLSA, then, there can be no claim

under Virginia state law for overtime pay—the law simply is not there.

Based on the above, the Defendants' contention that "[i]n order to succeed on her breach

of contract claim, the Plaintiff must prove that Defendants failed to pay her for all hours worked,

which itself is a violation of the FLSA" may or may not be accurate. Br. in Supp. of Mot. to

Dismiss 14. If the contract is for minimum wage payment or overtime at the FLSA prescribed

time-and-a-half rate, the Defendants are correct that the Plaintiff will have to prove, in essence,

that the Defendants violated the FLSA, which would render her state law claims preempted

under Anderson. Anderson, 508 F.3d at 193 (plaintiff-employees' state law claims preempted by

the FLSA where those claims depended on employees establishing that defendant-employer

violated the FLSA); Martinez-Hernandez, 578 F.Supp.2d at 819 (same). It is important to

remember what the FLSA covers and what it does not. Just a few months ago the U.S. District

Court for the District of Maryland noted that "[t]he FLSA does not guarantee that employees are

paid for every hour of work and does not allow for employees to recover more than the statutory

minimum wage." Avery v. Chariots for Hire, ---F.Supp.2d---, 2010 WL 3703299, at *7 (D.Md.

2010). But see Truslow v. Spotsylvania County Sheriff, 783 F.Supp. 274, 277 (E.D.Va. 1992)

(in an overtime compensation suit brought under the FLSA, the Court made the very general

statement that "[t]he FLSA requires employers to compensate employees for all hours worked").

The Fourth Circuit has noted that "there [is] no statutory violation [under the FLSA] so long as

---

[8] The Virginia Department of Labor and Industry's website confirms this. The Virginia Department of Labor and Industry: Payment of Wage, http://www.doli.virginia.gov/laborlaw/ laborlaw_faqs_wagep1.html (last visited Mar. 15, 2011).

each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate." Blankenship v. Thurston Motor Lines, 415 F.2d 1193, 1198 (4th Cir. 1969), cited with approval in Chariots for Hire, --- F.Supp.2d---, 2010 WL 3703299, at *7. In addition to its minimum wage provisions, the FLSA also generally requires payment at the rate of time and a half for all overtime hours, which it defines as over forty hours in a workweek. 29 U.S.C. § 207(a)(1).

The Complaint alleges that "Defendants' policy and/or practice was not to compensate Class Members their regular or statutorily required rate of pay for work…" Compl. 32. Nowhere in the Plaintiff's Complaint or brief does she mention which statute she is referencing. The most specific reference to any statute or body of statutes comes in the opening line of the Complaint: "This is a proceeding…to recover unpaid wages and unpaid overtime owed to employees of Defendants under the laws of Virginia and the common law." Compl. 1. The Plaintiff further avers that:

> Class Members are not asserting claims under this cause of action for overtime wages recoverable under the FLSA. However, Class Members nevertheless performed work pursuant to the policies and practices set forth herein, for which they were not compensated, regardless of whether they worked over 40 hours per week also entitling them to additional compensation under the FLSA.

Compl. 35. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (internal quotation marks and citing references omitted). Although the Plaintiff attempts to take the focus off of whether the hours she worked were, in fact, overtime, the distinction makes a great deal of difference for the purposes of determining whether her state law claims are preempted under the FLSA. As discussed above, in the absence of a contract that is more

generous than the FLSA, an overtime claim in Virginia must be brought under the FLSA. Herein lies the problem.

Neither the Complaint nor the Plaintiff's brief sets out any significant terms of the employment contract being alleged. The rate of pay under this contract, an essential term that the Plaintiff is seeking to enforce, is also missing. At the motion hearing Plaintiff's counsel averred that she knows the rate of pay on this contract, but expressed her belief that there is no requirement that she disclose that information in the Complaint in order to state a claim. To the contrary, a wage and hour complaint, whether brought under the FLSA or as a breach of contract action, must at least allege approximate wages. Pruell v. Caritas Christi, No. 09-11466, 2010 WL 3789318, at *3 (D.Mass. Sept. 27, 2010). In addition, the Plaintiff's Complaint must disclose "where [she] worked, what positions [she] held, [and] what [her] dates of employment were." DeSilva v. North Shore-Long Island Jewish Health System, Inc., ---F.Supp.2d---, 2011 WL 899296, at *5 (E.D.N.Y. 2011) (holding that the plaintiff's FLSA complaint failed to state a claim because it lacked this information). The Complaint should also contain "factual allegations about when the alleged unpaid wages were earned (i.e., which lunches and breaks were worked through without proper compensation), or the number of hours allegedly worked without compensation—the heart of the claim." Id. at *6 (internal quotation marks and citing references omitted). Again, approximations are acceptable. Id. The Complaint does not need to set out this information for all of the proposed class members, just Ms. Walker.[9] DeSilva, ---F.Supp.2d---, 2011 WL 899296, at *6. To be clear, the Court is not asking for any discovery to be done. At a minimum, Plaintiff's counsel should be able to get approximate information from the Plaintiff herself, which will allow the Defendants to frame a meaningful response.

---

[9] There has been no motion for class certification yet in this case, thus Ms. Walker, the named Plaintiff, is the sole Plaintiff at this point. Shelton v. Pargo, Inc., 582 F.2d 1298, 1304 (4th Cir. 1978).

The Complaint fails to state a claim for breach of contract because it lacks the essential terms discussed above, which the Plaintiff seeks to enforce here.  See Compel v. Citi Mortgage, Inc., No. 1:04-cv-1377, 2005 WL 4904816, at *2 (E.D.Va. Feb. 23, 2005) (in order to state a claim in a breach of contract case, the plaintiff "must identify which provisions imposed the purportedly breached obligation").  As discussed above, in Virginian wage and hour cases, breach of contract is only available in one, narrow circumstance.  The Plaintiff has not shown that her situation falls into that circumstance.  In fact, regardless of whether this is a FLSA or a breach of contract claim, the Complaint does not give the Court, and more importantly the Defendants, adequate notice of the nature of the claim.  Erickson v. Pardus, 551 U.S. 89, 93 (2007).  In its current form, the Complaint appears to present claims which are preempted by the FLSA, warranting its dismissal.  Anderson, 508 F.3d at 195.  Normally, "[a] complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to Rule 12(b)(6) but not dismissal with prejudice."  Belizan v. Hershon, 434 F.3d 579, 583 (D.C. Cir. 2006) (internal quotation marks and citations omitted).  The Court would grant the Plaintiff leave to amend her Complaint to add the missing facts, but because the Court finds in Part II of this Opinion that this lawsuit is duplicative of the Stickle suit, amendment would be futile.  McLean v. U.S., 566 F.3d 391, 401 (4th Cir. 2009) ("[o]nce a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant").  Therefore, the Plaintiff's request to amend is denied.  Pl.'s Br. in Opp'n 19.

II. The Plaintiff's Suit is Duplicative

Regardless of the current state of the claims set out in the Complaint, this case is duplicative of a suit Plaintiff's counsel filed in the District of Arizona in early 2008, Stickle v. SCI Western Market Support Center, L.P., et al..  That case arose out of the very same facts and

circumstances presented in the case at bar and sought relief for SCI employees nationwide under FLSA, ERISA, and RICO.  Pl.'s Br. in Opp'n 12-13; Stickle Compl., Dec. 10, 2010, ECF No. 28-1.  On September 30th, 2009, the U.S. District Court for the District of Arizona granted the conditional class certification motion made by Plaintiff's counsel.  Stickle v. SCI Western Market Support Center, L.P., No. 2:08-cv-83, 2009 WL 3241790, at *8 (D.Ariz. Sept. 30, 2009).

The Defendants contend that the Plaintiff is alleging the same pay violations and seeking the same remedies as in the pending Stickle case.  Br. in Supp. of Mot. to Dismiss 14.  They urge the Court to dismiss the Plaintiff's claim as duplicative of that Arizona lawsuit, which was filed first.  Id. at 9-12.  The Plaintiff counters that this suit covers only Virginia SCI employees and makes only state law claims, whereas Stickle covers SCI employees nationwide and is brought under federal labor laws.  Pl.'s Br. in Opp'n 12-13.  Furthermore, the Plaintiff notes that she will seek to have this case certified as an opt-out, "damages" class action under Fed. R. Civ. P. 23(b)(3), whereas the Stickle case is an opt-in class action.  Id.; Kern v. Siemens Corp., 393 F.3d 120, 124 (2d Cir. 2004) (Fed. R. Civ. P. 23(c) permits such opt-out class actions when the class action is brought under Fed. R. Civ. P. 23(b)(3)).

The Supreme Court has noted that "[a]s between federal district courts…though no precise rule has evolved, the general principle is to avoid duplicative litigation."  Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976) (although discussed in the Colorado River case, this is not what is commonly referred to as "Colorado River abstention," which is a narrow principle that is sometimes invoked by the federal courts where the same case is already pending in state court).  See also Great American Ins. Co. v. Gross, 468 F.3d 199, 207 n.6 (4th Cir. 2006) ("a district court may stay or dismiss a suit that is duplicative of another federal court suit"); Couch v. Jabe, No. 7:09-cv-434, 2010 WL 1416730, at *1 (W.D.Va. Apr. 8, 2010).  The

Fourth Circuit has generally noted that two suits are duplicative where "substantially the same parties litigate substantially the same issues in different forums." New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073 (4th Cir. 1991) (internal citing references omitted).

As discussed in Section I of this Opinion, the Plaintiff's claims appear to be preempted by the FLSA. Importantly, the Plaintiff is demanding the very same relief in this case as she is in Stickle. Compare Compl. 43 with Stickle Compl. 47. This is a crucial fact because a wage and hour case can be *either* a FLSA claim *or* a breach of contract claim—it cannot be both. See Chariots For Hire, ---F.Supp.2d---, 2010 WL 3703299, at *9 (dismissing FLSA claims because plaintiff-employees' salaries were above minimum wage, but allowing breach of contract claims to proceed). This is not a case like Martinez-Hernandez where the Plaintiff has alleged violations of a specific state statute with provisions more generous than the FLSA. Martinez-Hernandez, 578 F.Supp.2d at 819-20. The lawsuit before this Court has already been filed in the District of Arizona as a FLSA claim. Stickle Compl. 2. The Plaintiff therefore seeks to litigate the exact same claim based on the exact same facts presented in Stickle. See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., 679 F.Supp.2d 1287, 1297 (D.Kan. 2010) ("the purpose of the first-to-file rule—maximization of judicial economy—is most strongly in play when the second-filed case is a complete subset of the earlier action"). About a month after the District Court in Arizona conditionally certified a plaintiff class, the Plaintiff in the case at bar opted in as a party plaintiff in Stickle. Walker Consent to Become a Party Pl., Dec. 10, 2010, ECF No. 28-2. The case before this Court is truly an instance of "substantially the same parties litigat[ing] substantially the same issues in different forums." New Beckley Min. Corp., 946 F.2d at 1073.

For the purposes of the first-to-file analysis, the Plaintiff argues that the Court should consider the proposed Plaintiff Class instead of the individual Plaintiff here. Pl.'s Br. in Opp'n 14. She submits that there are significant differences in the proposed Plaintiff Class in this case and the conditionally certified class in Arizona. Id. In support of this contention the Plaintiff cites Gardner v. GC Services, LP, a recent case from the Southern District of California. Gardner v. GC Services, LP, No. 10-cv-997, 2010 WL 2721271 (S.D.Cal. July 6, 2010). The Gardner Court applied the rule that "in the context of a class action, the classes, and not the class representatives, are compared." Id. at *4 (internal quotation marks omitted) (quoting Adoma v. Univ. of Phoenix, Inc., 711 F.Supp.2d 1142, 1147 (E.D.Cal. 2010)). The Adoma case, in turn, cites a 2008 Northern District of California case for the same proposition. Ross v. U.S. Bank Nat. Ass'n, 542 F.Supp.2d 1014, 1020 (N.D.Cal. 2008). The Ross decision, which appears to be the origin of the rule, relies on a California secondary source. Id. (citing Cal. Jur.3d Actions § 284). Although it may be a well-established rule in the District Courts in California, this Court finds that the Fourth Circuit would be unlikely to take the same position. See In re Family Dollar FLSA Litigation, ---F.3d---, 2011 WL 989558, at *10 (4th Cir. 2011) (refusing to consider whether the District Court's denial of class certification was improper because "[w]ithout a viable claim, [the plaintiff] cannot represent others whom she alleged were similarly situated"); Shelton v. Pargo, Inc., 582 F.2d 1298, 1304 (4th Cir. 1978) ("[i]t is the actual certification of the action as a class action…which alone gives birth to the class as a jurisprudential entity [and] changes the action from a mere individual suit with class allegations into a true class action"); Bostron v. Apfel, 182 F.R.D. 188, 192 (D.Md. 1998) ("there is a sharp line of demarcation between an individual action seeking to become a class action and an actual class action") (citing reference omitted). Even if the Fourth Circuit were to use the California

rule offered by the Plaintiff, there would still be substantial overlap because the proposed

Plaintiff Class here is completely encompassed within the conditionally certified class in Stickle.

See Pl.'s Br. in Opp'n 12-13 (proposed Class in this case includes Virginia SCI employees,

whereas the class in Stickle includes SCI employees nationwide). In the Gardner case, by

contrast, the party overlap factor weighed in favor of the plaintiff because there was only one

identical party between the two actions the Court was considering. Gardner, 2010 WL 2721271,

at *5. As discussed above, that is certainly not the case here.

To avoid duplicative litigation in the federal courts, "when two identical actions are

pending at the same time in two federal courts, the first-filed action is generally preferred." The

Fox Group, Inc. v. Cree, Inc., ---F.Supp.2d---, 2010 WL 4371432, at *4 (E.D.Va. 2010). "[T]his

rule is not to be mechanically applied," however. Quesenberry v. Volvo Group North America,

Inc., No. 1:09-cv-22, 2009 WL 648658, at *3 (W.D.Va. Mar. 10, 2009). In addition to

"consider[ing] any special factors counseling for or against the exercise of jurisdiction," the

Court should also take into account whether the balance of convenience favors the second filed

case. Volvo Constr. Equip. N. Am. v. CLM Equip. Co, Inc., 386 F.3d 581, 594-95 (4th Cir.

2004) (citing Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir.

1974)); Couch, 2010 WL 1416730, at *1 (for the quote). Neither set of considerations favors

this second filed action.

The "special factors" considered by the Courts in this district include "the desirability of

avoiding piecemeal litigation" and "the order in which jurisdiction was obtained by the

concurrent forums." Couch, 2010 WL 1416730, at *1 (quoting Calvert Fire Ins. Co. v. American

Mutual Reinsurance Co., 600 F.2d 1228, 1234 (7th Cir. 1979)). Having one plaintiff or subset of

plaintiffs from a currently pending action file the same suit in a different district would certainly

result in piecemeal litigation with a substantial likelihood of inconsistent results.  The inquiry as to which district first obtained jurisdiction favors neither party because SCI has maintained businesses in both Arizona and Virginia simultaneously over the last several years, which appears to be the time period in question.[10]

The Couch Court also considered "the inconvenience of the…forum," a matter analyzed in more detail when taking into account the balance of convenience.  Couch, 2010 WL 1416730, at *1; CLM Equip. Co, Inc., 386 F.3d at 594-95.  The balance of convenience factors weighed by Courts in this district include:

> (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the cost of obtaining attendance of willing witnesses; (5) the possibility of viewing premises, if applicable; (6) all other practical problems that make trial of a case easy, expeditious, and inexpensive; and (7) factors of public interest, including the relative congestion of court dockets and a preference for holding a trial in the community most affected.

Federated Mut. Ins. Co. v. Pactiv Corp., No. 5:09-cv-73, 2010 WL 503090, at *3 (W.D.Va. Feb. 9, 2010).  In this case, the Plaintiff chose the Western District of Virginia after having already chosen the District of Arizona as her forum.  Not only was the District of Arizona the Plaintiff's original choice, but this Plaintiff is not even a resident of the Western District of Virginia.

Pyrocap Int'l Corp. v. Ford Motor Co., 259 F.Supp.2d 92, 95 (D.D.C. 2003) (a plaintiff's choice is entitled to less deference where she chooses a forum outside the district in which she resides); Civil Cover Sheet, Oct. 5, 2010, ECF No. 1-1 (indicating that Ms. Walker lives in Norfolk).  The Complaint does not indicate the location at which the Plaintiff was employed and this omission makes it impossible for the Court to consider the remainder of the balance of convenience factors without engaging in baseless speculation, which it declines to do.  Federated Mut. Ins. Co., 2010

---

[10] Unfortunately, the Complaint does not reveal the relevant time period.  Although the Complaint mentions a switch in the Defendant's policies in July 2007, the time period covered in the Complaint appears to be without a beginning or an end.  Compl. 4.

WL 503090, at *3 (the Court should also consider the place of the injury) (citing <u>S. Ry. Co. v.</u> <u>Madden</u>, 235 F.2d 198, 200-01 (4th Cir. 1956)).  Deference to the first filed <u>Stickle</u> case is appropriate here.  <u>Cree, Inc.</u>, ---F.Supp.2d---, 2010 WL 4371432, at *4 (noting a general preference for the first filed action).

<u>**CONCLUSION**</u>

For the reasons set out above, the Defendants' Motion to Dismiss is **GRANTED** and the Plaintiff's request for leave to amend her Complaint is **DENIED**.

ENTERED this 12th day of April, 2011.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE